# Request for Judical Notice
# EXHIBIT 6



## State of California
## Office of the Attorney General

### ROB BONTA
*ATTORNEY GENERAL*

November 3, 2022

Mark Zuckerberg
Meta Platforms, Inc.
1 Hacker Way
Menlo Park, CA 94025

Susan Wojcicki
YouTube, Inc.
901 Cherry Avenue
San Bruno, CA 94066

Elon Musk
Twitter, Inc.
1355 Market Street, #900
San Francisco, CA 94103

Shou Zi Chew
TikTok Inc.
5800 Bristol Parkway
Culver City, CA 90230

Steve Huffman
Reddit Inc.
548 Market Street, Suite 16093
San Francisco, CA 94104

Dear Messrs. Zuckerberg, Musk, Chew, Huffman, and Ms. Wojcicki:

I write to express my concern about the ongoing spread of disinformation and misinformation through social media platforms operated by your companies. Disinformation and misinformation pose very real and growing threats to our democracy and to the rule of law. While your platforms have taken some efforts to combat disinformation and misinformation campaigns, past efforts have proven inadequate, especially given the growing tide of politically motivated violence nationwide.

Messrs. Zuckerberg, Musk, Chew, Huffman and Ms. Wojcicki
November 3, 2022
Page 2

In advance of the upcoming November 2022 midterm election, social media platforms must take critical steps to stop the spread of disinformation and misinformation that attack the integrity of our electoral processes. As California's Attorney General, I am charged with protecting the rights of our residents, including the right to vote. I urge you to strengthen and accelerate your companies' ongoing efforts to consistently, transparently, and aggressively address violations of your policies with respect to disinformation and violations of state and federal law. I also implore you to employ your immense resources, tools, and familiarity with the operation of your social media platforms to stop the spread of disinformation, misinformation, conspiracy theories, and threats that fuel political violence.

Over half of all adults in the U.S. consume at least some of their news via social media platforms.[1] Most U.S. adults also grossly overestimate their ability to distinguish false from legitimate news, and those who most overrate their ability to spot fake news are the most likely to disseminate it.[2] That leaves the American populace vulnerable to coordinated disinformation attacks that exploit social and political divisions and undermine trust in our democratic institutions, such as Russia's brazen interference in the 2016 election.[3] It has also allowed for the widespread dissemination of conspiracies and misinformation that pose real dangers to real people, such as those that deter and disenfranchise voters with false election information,[4] spread

---

[1] *Social Media and News Fact Sheet*, PEW RESEARCH CENTER (Sept. 20, 2022), https://www.pewresearch.org/journalism/fact-sheet/social-media-and-news-fact-sheet/.

[2] Benjamin A. Lyons et al., *Overconfidence in News Judgments is Associated with False News Susceptibility*, PNAS (May 28, 2021), https://www.pnas.org/doi/epdf/10.1073/pnas.2019527118.

[3] *See, generally*, U.S. Senate, Report of the Select Comm. on Intelligence on Russian Active Measures Campaigns and Interference in the 2016 U.S. Election, Volume II: Russia's Use of Social Media, S. Rep. No. 116-XX (2019) (hereinafter "Senate Report Vol. II"), https://www.intelligence.senate.gov/sites/default/files/documents/Report_Volume2.pdf; *see also* Indictment, *United States v. Internet Research Agency, et al.*, Case 1:18-cr-00032-DLF (D.D.C. Feb. 16, 2018), https://www.justice.gov/file/1035477/download.

[4] *See, e.g.*, Ellen Ioanes, *"Stop the Steal" Conspiracy Theories Are Coming for Swing State Ballot Boxes*, VOX (Oct. 30, 2022), https://www.vox.com/policy-and-politics/2022/10/30/23431048/poll-watchers-voting-intimidation; Christian Paz, *Latino Voters are Being Flooded With Even More Misinformation in 2022*, VOX (Sep. 20, 2022), https://www.vox.com/the-highlight/23329139/latino-voters-misinformation-2022; Ian Vandewalker, *Digital Disinformation and Vote Suppression*, BRENNAN CENTER (Sept. 2, 2020), https://www.brennancenter.org/our-work/research-reports/digital-disinformation-and-vote-suppression.

Messrs. Zuckerberg, Musk, Chew, Huffman and Ms. Wojcicki
November 3, 2022
Page 3

hoaxes and debunked conspiracy theories about voter fraud and election results,[5] and foment insurrection and violence against elected officials.[6]

Notwithstanding your efforts towards combating false information online, its continued spread and increasingly violent consequences demand greater corrective action. Reasonable users expect that social media platforms will vigorously enforce their terms of service and that they will provide a safe medium for engagement. It is therefore incumbent on your companies to institute and enforce durable, dynamic policies that will actually prevent disinformation and misinformation from spreading, as well as aid law enforcement in protecting the integrity of the democratic process. Each of your companies have published policies that prohibit much of the disinformation, coordinated inauthentic behavior, and election interference exhibited previously. You must continue to take action pursuant to those policies and enforce your terms against disinformation, voter suppression, and coordinated inauthentic or violent behavior. While I appreciate that you must work to balance the free exchange of ideas and opinions, implementing your policies will mitigate the real-world threat that the spread of election-related disinformation poses to our democracy and its citizens.

---

[5] *See, e.g.*, Paul Barrett, *Spreading The Big Lie: How Social Media Sites Have Amplified False Claims of U.S. Election Fraud*, NYU STERN CENTER FOR BUSINESS AND HUMAN RIGHTS (Sept. 2022), https://bhr.stern.nyu.edu/tech-big-lie; Shannon Bond & Bobby Allyn, *How the 'Stop the Steal' Movement Outwitted Facebook Ahead of the Jan. 6 Insurrection*, NPR (Oct. 22, 2021), https://www.npr.org/2021/10/22/1048543513/facebook-groups-jan-6-insurrection; Gabriel R. Sanchez, Keesha Middlemass & Aila Rodriguez, *Misinformation is Eroding the Public's Confidence in Democracy*, BROOKINGS (Jul. 26, 2022), https://www.brookings.edu/blog/fixgov/2022/07/26/misinformation-is-eroding-the-publics-confidence-in-democracy/.

[6] *See, e.g.*, Hannah Allam & Souad Mekhennet, *Accused Pelosi Attacker's History Shows Blurry Lines of Radicalization*, THE WASHINGTON POST (Oct. 31, 2022), https://www.washingtonpost.com/national-security/2022/10/31/david-depape-pelosi-online-radicalization/; Ellen Ioanes, *We're In a New Era of Attacks on Political Leaders*, VOX (Oct. 29, 2022), https://www.vox.com/policy-and-politics/2022/10/29/23428956/political-attacks-increasing-far-right-congress-pelosi; Stephanie Lai, Luke Broadwater & Carl Hulse, *Lawmakers Confront a Rise in Threats and Intimidation, and Fear Worse*, N.Y. TIMES (Oct. 1, 2022), https://www.nytimes.com/2022/10/01/us/politics/violent-threats-lawmakers.html; Ruby Cramer, *When a Man With a Pistol Shows Up Outside a Congresswoman's House,* THE WASHINGTON POST (Sep. 8, 2022), https://www.washingtonpost.com/politics/2022/09/08/congress-pramila-jayapal-threats-stalking/; Miles Parks, *Death Threats and Conspiracy Theories: Why 2020 Won't End for Election Officials*, NPR (Aug. 17, 2021), https://www.npr.org/2021/08/17/1027747378/death-threats-and-conspiracy-theories-why-2020-wont-end-for-election-officials; #*StopTheSteal: Timeline of Social Media and Extremist Activities Leading to 1/6 Insurrection*, JUST SECURITY (Feb. 10, 2021), https://www.justsecurity.org/74622/stopthesteal-timeline-of-social-media-and-extremist-activities-leading-to-1-6-insurrection/; see also Select Comm. to Investigate the January 6th Attack on the United States Capitol, Select Comm. Hearing (March 31, 2022), testimony of Dr. Rachel Kleinfeld ("The Rise in Political Violence in the United States and Damage to Our Democracy"), https://carnegieendowment.org/2022/03/31/rise-in-political-violence-in-united-states-and-damage-to-our-democracy-pub-87584.

Messrs. Zuckerberg, Musk, Chew, Huffman and Ms. Wojcicki
November 3, 2022
Page 4

**1.   The State of California Has a Mandate to Protect its Citizens' Voting Rights**

California codifies protections of its citizens' constitutional right to vote. Our state laws prohibit interference with voting rights through violence, threats, intimidation, and other coercive conduct (*see, e.g.,* Civ. Code, § 52.1(b); Elec. Code, §§ 18502, 18540). Indeed, it is a felony to threaten to use any force, violence, or tactic of coercion or intimidation to compel any other person to vote or refrain from voting, vote for a particular person or measure, or because any person voted or refrained from voting. (Elec. Code, § 18540). California also prohibits knowingly distributing intentionally misleading information about the time, place, or manner of voting, and about voter eligibility (*see, e.g.,* Elec. Code, §§ 18302, 18543).[7]

To further protect voters, state law requires social media companies that sell political advertisements to disclose who funded certain political advertisements and maintain an online record of such advertisements for public inspection (*see, e.g.,* Gov. Code, § 84504.6). In 2024, social media platforms will also have additional transparency obligations, as required by recent state legislation that requires disclosures on content moderation practices as it relates to extremism or radicalization, disinformation or misinformation, and foreign political interference, among other areas.[8]

The California Department of Justice will not hesitate to enforce these laws against any individual or group that violates them. However, given social media's prominence and influence in American political discourse, your companies and you as these companies' executives share a responsibility to use the tools at your disposal to combat the dissemination of disinformation that interferes with our electoral system and to report to law enforcement illegal activity detected on your respective social media platforms that interferes with Americans' right to vote.

Indeed, platforms such as yourselves have a duty to cooperate fully and expeditiously with law enforcement investigations. Disinformation and election crimes hosted on your platforms should be dealt with immediately, before the opportunity to change a vote or dissuade a voter. You have an obligation to cooperate with law enforcement in all circumstances, but especially in instances that strike at the heart of democracy.

**2.   Social Media Platforms Must Do More to Counter the Amplification of False Conspiracies That Undermine Confidence in the Electoral Process, Encourage Unlawful Interference in Elections, and Threaten the Rule of Law**

Social media platforms are the primary engines driving the spread of election-related disinformation and misinformation, in spite of efforts to moderate content and remove false

---

[7] Attached to this letter, please find an Addendum with a more comprehensive list of applicable laws.

[8] Assem. Bill 587, 2022 Reg. Sess., ch. 269, 2022 Cal. Stat.

Messrs. Zuckerberg, Musk, Chew, Huffman and Ms. Wojcicki
November 3, 2022
Page 5

information.[9] In advance of the upcoming election, one source found the term "stolen election" was mentioned over 325,000 times on one platform in the space of a single month, "a number that has been fairly steady throughout the year and that was up nearly 900 percent from the same period in 2020."[10] Videos perpetuating debunked election fraud theories, such as false claims that the 2020 election was stolen,[11] have been viewed millions of times in the past year, tripling view counts from the year prior.[12] Another platform's content moderation algorithms have failed to filter obvious disinformation and misinformation hashtags, allowing more than 60 percent of videos containing harmful misinformation to be viewed by users before being removed.[13] While efforts to date are a step in the right direction, they are insufficient to keep pace with evolving threats.

[9] *See, e.g.*, *As 2022 Midterms Approach, Disinformation On Social Media Platforms Continues*, PBS NEWS HOUR (Oct. 21, 2022), https://www.pbs.org/newshour/politics/as-2022-midterms-approach-disinformation-on-social-media-platforms-continues; Dam Hee Kim, Anjana Susarla & Scott Shackelford, *Experts Grade Big Tech On Readiness to Handle Midterm Election Misinformation*, ARS TECHNICA (Oct. 18, 2022), https://arstechnica.com/tech-policy/2022/10/experts-grade-big-tech-on-readiness-to-handle-midterm-election-misinformation/.

[10] Cecilia Kang, *The Most Dominant Toxic Election Narratives Online*, N.Y. TIMES (Sep. 23, 2022), https://www.nytimes.com/2022/09/23/technology/midterm-elections-misinformation.html ["continued falsehoods about rampant election fraud; threats of violence and citizen policing of elections; and divisive posts on health and social policies" have "flooded" social media in advance of the November 8, 2022 election."]; *see also* Steven Lee Myers & Sheera Frenkel, *How Disinformation Splintered and Became More Intractable*, N.Y. TIMES (Oct. 20, 2022), https://www.nytimes.com/2022/10/20/technology/disinformation-spread.html.

[11] *See, e.g.*, Christina A. Cassidy, *Far Too Little Vote Fraud to Tip Election to Trump, AP Finds*, ASSOCIATED PRESS (Dec. 14, 2021), https://apnews.com/article/voter-fraud-election-2020-joe-biden-donald-trump-7fcb6f134e528fee8237c7601db3328f; Alexa Ura & Allyson Waller, *First Part of Texas' 2020 Election Audit Reveals Few Issues, Echoes Findings From Review Processes Already in Place*, THE TEXAS TRIBUNE (Dec. 31, 2021), https://www.texastribune.org/2021/12/31/secretary-state-texas-election-audit/; Karen Fann, *Report Concerning the Maricopa County Forensic Audit* (Sept. 24, 2021), https://www.azsenaterepublicans.com/letter-to-the-ag; William Cummings, Joey Garrison & Jim Sergent, *By the Numbers: President Donald Trump's Failed Efforts to Overturn the Election*, USA TODAY (Jan. 6, 2021), https://www.usatoday.com/in-depth/news/politics/elections/2021/01/06/trumps-failed-efforts-overturn-election-numbers/4130307001/; Order and Opinion (ECF No. 172), *Timothy King, et al. v. Gretchen Whitmer et. al.*, No. 2:20-cv-13134-LVP-RSW (E.D. Mich. Aug. 25, 2021), https://www.michigan.gov/-/media/Project/Websites/AG/opinions/172_opinion__order_King.pdf?rev=094b2bd4f3e141a1b9bb5aff9ee2cf6a.

[12] Kang, *supra* n.10.

[13] Tiffany Hsu, *On TikTok, Election Misinformation Thrives Ahead of Midterms*, N.Y. TIMES (Aug. 16, 2022), https://www.nytimes.com/2022/08/14/business/media/on-tiktok-election-misinformation.html.

Messrs. Zuckerberg, Musk, Chew, Huffman and Ms. Wojcicki
November 3, 2022
Page 6

When debunked election fraud falsehoods are spread and amplified, foreign nations are given a platform to destabilize American elections and erode trust in elections and public institutions.[14] This year, numerous China-based operations used Twitter and Facebook to repeat and amplify election-related conspiracy theories and falsehoods in advance of the upcoming U.S. midterm elections, mimicking earlier Russian efforts to influence the 2020 election.[15] Another Iran-based operation used fake accounts during the same period to amplify divisive information on both Twitter and Reddit.[16] Some of those fake accounts—particularly those that trafficked in far-right conspiracy content—were able to gain tens of thousands of followers and generate hundreds of thousands of tweets and retweets before being taken down.[17]

But disinformation and misinformation are no longer limited to foreign threats; in August 2022, a majority staff report by the U.S. House of Representatives' Committee on Oversight and Reform found that "the greatest current threat to democracy legitimacy now comes from lies by domestic actors who seek to convince Americans that their election systems are fraudulent, corrupt, or insecure."[18] Hoaxes and fabricated claims of election fraud are prompting angry and misinformed actors to disrupt orderly election processes and inundate local government offices with baseless accusations and demands for investigations.[19] False narratives about ballot harvesting have prompted armed vigilantes to patrol ballot drop-boxes and film or photograph voters as they deposit their ballots.[20] The malicious spread of disinformation and misinformation on social media is now driving calculated anti-democratic efforts to disrupt American elections and intimidate citizens who exercise their right to vote.[21]

---

[14] *See, generally,* Senate Report Vol. II, *supra* n.3; *see also* Indictment, *United States v. Internet Research Agency, et al.*, Case 1:18-cr-00032-DLF (D.D.C. Feb. 16, 2018), https://www.justice.gov/file/1035477/download.

[15] Naomi Nix, Jeremy B. Merrill & Joseph Menn, *MAGA Porn; Hate For Trump: China-Based Accounts Stoke Division*, THE WASHINGTON POST (Nov. 1, 2022), https://www.washingtonpost.com/technology/2022/11/01/china-midterms-twitter-networks/.

[16] *Id.*

[17] *Id.*

[18] H. Comm. On Oversight and Reform, 117th Cong., "'Exhausting and Dangerous': The Dire Problem of Election Disinformation and Misinformation" (Comm. Print Aug. 11, 2022, by Majority Staff) (hereinafter "Election Disinformation Report"), https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2022-08-11%20Election%20Disinformation%20Report%20.pdf; *see also, e.g.*, Margi Murphy & Jack Gillum, *'Raccoon Army' Swamps Election Officials in Dubious Campaign to Disprove Results*, BLOOMBERG NEWS (Oct. 25, 2022), https://www.bloomberg.com/news/articles/2022-10-25/florida-man-s-election-denial-project-swamps-election-officials?leadSource=uverify%20wall.

[19] Election Disinformation Report, *supra* n.18 at 6-7.

[20] See Temporary Restraining Order, *Arizona Alliance for Retired Americans v. Clean Elections USA, et al.*, No. CV-22-01823-PHX-MTL (D. Ariz. Nov. 1, 2022); Statement of Interest of the United States, *League of Women Voters of Arizona v. Lions of Liberty, LLC*, No. CV-22-08196-MTL (D. Ariz. Oct. 31, 2022).

[21] *See, e.g.*, Anuj Chopra, *Right-Wing Election 'Army' Sparks Fear for US Midterms*, BARRON'S (Oct. 26, 2022), https://www.barrons.com/news/right-wing-election-army-sparks-fear-for-us-midterms-01666833309; David Freedlander, *Cleta Mitchell is Training Thousands of Trump Loyalists to Monitor*

Messrs. Zuckerberg, Musk, Chew, Huffman and Ms. Wojcicki
November 3, 2022
Page 7

3. **Social Media Platforms Have an Obligation to Act Against Disinformation and Misinformation on Social Media that Fuels Politically Motivated Violence**

The January 6, 2021 violent insurrection is now a part of our national history, and one derived from and deeply connected to hoaxes and conspiracy theories amplified on social media, some of which continue to circulate to this day.[22] The violence on January 6 is not an isolated incident; serious threats and violent physical attacks on public officials and their loved ones have been on the rise, fueled by social media that amplifies extremist messaging and perpetuates falsehoods.[23] The most chilling example arose just days ago in San Francisco, California, when the husband of House Speaker Nancy Pelosi was violently assaulted in his home by an intruder who intended to kidnap and maim Speaker Pelosi as a warning to other members of Congress.[24] Prior to the assault, reports note that the attacker had consumed and spread baseless conspiracies concerning, among other things, the 2020 election.[25]

As the chief law enforcement officer for the State of California, I cannot tolerate attacks on our elected leaders and civil servants. To function, a democratic system requires that our officials and citizens be able to execute their civic responsibilities without threat of violence or

_____

*the Polls on Election Day. What Could Go Wrong?*, NEW YORK MAGAZINE (Oct. 20, 2022), https://nymag.com/intelligencer/2022/10/cleta-mitchell-trump-supporters-election-polls.html; Mimi Swartz, *How True The Vote Fabricates Claims of Election Fraud, for Fun and Profit*, TEXAS MONTHLY (Aug. 22, 2022), https://www.texasmonthly.com/news-politics/true-the-vote-election-fraud/; Rob Kuznia, Curt Devine, Nelli Black & Drew Griffin, *Stop the Steal's Massive Disinformation Campaign Connected to Roger Stone*, CNN (Nov. 14, 2020), https://www.cnn.com/2020/11/13/business/stop-the-steal-disinformation-campaign-invs/index.html.

[22] *See, e.g.*, Election Disinformation Report, *supra* n.18 at 3-4, 9-10; Brooke Stephenson, *Using Facebook's Own Data to Understand the Platform's Role in Jan. 6*, PROPUBLICA (Mar. 9, 2022), https://www.propublica.org/article/using-facebooks-own-data-to-understand-the-platforms-role-in-jan-6; Alec Dent & Khaya Himmelman, *January 6 and the Consequences of Disinformation*, THE DISPATCH (Jan. 6, 2022), https://thedispatch.com/article/january-6-and-the-consequences-of; Craig Silverman, Craig Timberg, Jeff Kao & Jeremy Merrill, *Facebook Hosted Surge of Misinformation and Insurrection Threats in Months Leading Up to Jan. 6 Attack, Records Show*, PROPUBLICA (Jan. 4, 2022) https://www.propublica.org/article/facebook-hosted-surge-of-misinformation-and-insurrection-threats-in-months-leading-up-to-jan-6-attack-records-show.

[23] *See supra*, n.6; Election Disinformation Report, *supra* n.18 at 3-4, 9-10.

[24] Richard Winton, *Attack Suspect David DePape Intended to Kidnap, 'Kneecap' Nancy Pelosi, Prosecutors Allege*, LOS ANGELES TIMES (Oct. 31, 2022), https://www.latimes.com/california/story/2022-10-31/chilling-new-details-emerge-in-attack-on-paul-pelosi; Criminal Complaint, *United States v. David Wayne DePape*, 3:22-mj-71419-MAG (N.D. Cal. Oct. 31, 2022).

[25] Hannah Allam & Souad Mekhennet, *Accused Pelosi Attacker's History Shows Blurry Lines of Radicalization*, *supra* n.6; Summer Lin, Salvador Hernandez & Terry Castleman, *Accused Pelosi Attacker David DePape Spread QAnon, Other Far-right, Bigoted Conspiracies*, LOS ANGELES TIMES (Oct. 28, 2022), https://www.latimes.com/california/story/2022-10-28/pelosi-attack-suspect-david-depape-shared-conspiracy-theories.

Messrs. Zuckerberg, Musk, Chew, Huffman and Ms. Wojcicki
November 3, 2022
Page 8

intimidation.[26] I also will not stand for accompanying attacks on our shared democracy that threaten our residents' right to vote, and I implore you to do more to rid your platforms of the dangerous disinformation, misinformation, conspiracy theories, and threats that fuel political violence, spread fear and distrust, and ultimately chill our democratic process.

Sincerely,

ROB BONTA
Attorney General

---

[26] Stephanie Lai et al, *Lawmakers Confront a Rise in Threats and Intimidation, and Fear Worse*, N.Y. TIMES, *supra* n.6; Ruby Edlin & Turqouise Baker, *Poll of Local Election Officials Finds Safety Fears for Colleagues — and Themselves*, BRENNAN CENTER (Mar. 10, 2022), https://www.brennancenter.org/our-work/analysis-opinion/poll-local-election-officials-finds-safety-fears-colleagues-and; Tom Hamburger, Rosalind S. Helderman & Amy Gardner, *'We Are in Harm's Way': Election Officials Fear For Their Personal Safety Amid Torrent of False Claims About Voting*, THE WASHINGTON POST (Aug. 11, 2021), https://www.washingtonpost.com/politics/election-officials-threats/2021/08/11/bb2cf002-f9ed-11eb-9c0e-97e29906a970_story.html.

# ADDENDUM

<u>**California Election Laws**</u>

***The following is a non-exclusive list of relevant election-related laws in California. All sections listed below are from the California Election Code.***

<u>**Misrepresentation by Candidates**</u>

**Section 18350.**  (a) A person is guilty of a misdemeanor who, with intent to mislead the voters in connection with his or her campaign for nomination or election to a public office, or in connection with the campaign of another person for nomination or election to a public office, does either of the following acts:

(1) Assumes, pretends, or implies, by his or her statements, conduct, or campaign materials, that he or she is the incumbent of a public office when that is not the case.

(2) Assumes, pretends, or implies, by his or her statements, conduct, or campaign materials, that he or she is or has been acting in the capacity of a public officer when that is not the case.

(b) A violation of this section may be enjoined in a civil action brought by a candidate for the public office involved.

**Section 18351.**  Any candidate in an election or incumbent in a recall election who knowingly makes a false statement of a material fact in a candidate's statement, prepared pursuant to Section 11327 or 13307, with the intent to mislead the voters in connection with his or her campaign for nomination or election to a nonpartisan office is punishable by a fine not to exceed one thousand dollars ($1,000).

**Election Fraud and Cyberfraud**

**Section 18320.**  (a) This act shall be known and may be cited as the "California Political Cyberfraud Abatement Act."

(b) It is unlawful for a person, with intent to mislead, deceive, or defraud, to commit an act of political cyberfraud.

(c) As used in this section:

(1) "Political cyberfraud" means a knowing and willful act concerning a political Web site that is committed with the intent to deny a person access to a political Web site, deny a person the opportunity to register a domain name for a political Web site, or cause a person reasonably to believe that a political Web site has been posted by a person other than the person who posted the Web site, and would cause a reasonable person, after reading the Web site, to believe the site actually represents the views of the proponent or opponent of a ballot measure. Political cyberfraud includes, but is not limited to, any of the following acts: (A) Intentionally diverting or redirecting access to a political Web site to another person's Web site by the use of a similar domain name, meta-tags, or other electronic measures. (B) Intentionally preventing or denying

exit from a political Web site by the use of frames, hyperlinks, mousetrapping, popup screens, or
other electronic measures. (C) Registering a domain name that is similar to another domain name
for a political Web site. (D) Intentionally preventing the use of a domain name for a political
Web site by registering and holding the domain name or by reselling it to another with the intent
of preventing its use, or both.

(2) "Domain name" means any alphanumeric designation that is registered with or assigned by
any domain name registrar, domain name registry, or other domain registration authority as part
of an electronic address on the Internet.

(3) "Political Web site" means a Web site that urges or appears to urge the support or opposition
of a ballot measure.

**Section 18321.**  This article does not apply to a domain name registrar, registry, or registration
authority.

**Section 18322.**  In addition to any other remedies available under law, a court may order the
transfer of a domain name as part of the relief awarded for a violation of this article.

**Section 18301.**  In addition to any other penalty, any person who prints or otherwise duplicates,
or causes to be printed or duplicated, a simulated ballot or simulated sample ballot that does not
contain the statement required by Section 20009 or that uses an official seal or insignia in
violation thereof, is guilty of a misdemeanor.

**Section 18302.**  Every person is guilty of a misdemeanor who knowingly causes to be mailed or
distributed, or knowingly mails or distributes, literature to any voter that includes a designation
of the voter's precinct polling place other than a precinct polling place listed for that voter in an
official precinct polling list that constituted the latest official precinct polling list at sometime not
more than 30 days prior to the mailing or distribution.

**Section 18303.**  Every person who violates Section 84305 of the Government Code relating to
mass mailing is subject to the penal provisions set forth in Chapter 11 (commencing with Section
91000) of Title 9 of the Government Code.

**Section 18304.**  (a) Any person who uses or allows to be used any reproduction or facsimile of
the seal of the county or the seal of a local government agency in any campaign literature or
mass mailing, as defined in Section 82041.5 of the Government Code, with intent to deceive the
voters, is guilty of a misdemeanor.

(b) For purposes of this section, the use of a reproduction or facsimile of a seal in a manner that
creates a misleading, erroneous, or false impression that the document is authorized by a public
official is evidence of intent to deceive.

(c) For purposes of this section, the term "local government agency" means a school district,
special or other district, or any other board, commission, or agency of local jurisdiction.

**Section 18500.**  Any person who commits fraud or attempts to commit fraud, and any person who aids or abets fraud or attempts to aid or abet fraud, in connection with any vote cast, to be cast, or attempted to be cast, is guilty of a felony, punishable by imprisonment for 16 months or two or three years.

**Section 18501.**  Any public official who knowingly violates any of the provisions of this chapter, and thereby aids in any way the illegal casting or attempting to cast a vote, or who connives to nullify any of the provisions of this chapter in order that fraud may be perpetrated, shall forever be disqualified from holding office in this state and upon conviction shall be sentenced to a state prison for 16 months or two or three years.

**Section 18502.**  Any person who in any manner interferes with the officers holding an election or conducting a canvass, or with the voters lawfully exercising their rights of voting at an election, as to prevent the election or canvass from being fairly held and lawfully conducted, is punishable by imprisonment pursuant to subdivision (h) of Section 1170 of the Penal Code for 16 months or two or three years.

**Corruption of Voters**

**Section 18520.**  A person shall not directly or through another person give, offer, or promise any office, place, or employment, or promise to procure or endeavor to procure any office, place, or employment to or for any voter, or to or for any other person, in order to induce that voter at any election to:

(a) Refrain from voting.

(b) Vote for any particular person.

(c) Refrain from voting for any particular person.

A violation of any of the provisions of this section shall be punishable by imprisonment pursuant to subdivision (h) of Section 1170 of the Penal Code for 16 months or two or three years.

**Section 18521.**  A person shall not directly or through any other person receive, agree, or contract for, before, during or after an election, any money, gift, loan, or other valuable consideration, office, place, or employment for himself or any other person because he or any other person:

(a) Voted, agreed to vote, refrained from voting, or agreed to refrain from voting for any particular person or measure.

(b) Remained away from the polls.

(c) Refrained or agreed to refrain from voting.

(d) Induced any other person to:

(1) Remain away from the polls.

(2) Refrain from voting.

(3) Vote or refrain from voting for any particular person or measure.

Any person violating this section is punishable by imprisonment pursuant to subdivision (h) of Section 1170 of the Penal Code for 16 months or two or three years.

**Section 18522.**  Neither a person nor a controlled committee shall directly or through any other person or controlled committee pay, lend, or contribute, or offer or promise to pay, lend, or contribute, any money or other valuable consideration to or for any voter or to or for any other person to:

(a) Induce any voter to:

(1) Refrain from voting at any election.

(2) Vote or refrain from voting at an election for any particular person or measure.

(3) Remain away from the polls at an election.

(b) Reward any voter for having:

(1) Refrained from voting.

(2) Voted for any particular person or measure.

(3) Refrained from voting for any particular person or measure.

(4) Remained away from the polls at an election.

Any person or candidate violating this section is punishable by imprisonment pursuant to subdivision (h) of Section 1170 of the Penal Code for 16 months or two or three years.

**Section 18523.**  A person shall not directly or through any other person advance or pay, or cause to be paid, any money or other valuable thing to or for the use of any other person, with the intent that it, or any part thereof, shall be used in bribery at any election, or knowingly pay or cause to be paid any money or other valuable thing to any person in discharge or repayment of any money, wholly or in part, expended in bribery at any election.

Any person violating this section is punishable by imprisonment pursuant to subdivision (h) of Section 1170 of the Penal Code for 16 months or two or three years.

**Section 18524.**  A person shall not directly or through any other person advance or pay, or cause to be paid, any money or other valuable thing to or for the use of any other person, with the

intent that it, or any part thereof, will be used for boarding, lodging, or maintaining a person at any place or domicile in any election precinct, ward, or district, with intent to secure the vote of that person or to induce that person to vote for any particular person or measure.

Any person violating this section is punishable by imprisonment pursuant to subdivision (h) of Section 1170 of the Penal Code for 16 months or two or three years.

## Voter Intimidation

**Section 18540.** (a) Every person who makes use of or threatens to make use of any force, violence, or tactic of coercion or intimidation, to induce or compel any other person to vote or refrain from voting at any election or to vote or refrain from voting for any particular person or measure at any election, or because any person voted or refrained from voting at any election or voted or refrained from voting for any particular person or measure at any election is guilty of a felony punishable by imprisonment pursuant to subdivision (h) of Section 1170 of the Penal Code for 16 months or two or three years.

(b) Every person who hires or arranges for any other person to make use of or threaten to make use of any force, violence, or tactic of coercion or intimidation, to induce or compel any other person to vote or refrain from voting at any election or to vote or refrain from voting for any particular person or measure at any election, or because any person voted or refrained from voting at any election or voted or refrained from voting for any particular person or measure at any election is guilty of a felony punishable by imprisonment pursuant to subdivision (h) of Section 1170 of the Penal Code for 16 months or two or three years.

**Section 18541.** (a) No person shall, with the intent of dissuading another person from voting, within 100 feet of a polling place, do any of the following:

(1) Solicit a vote or speak to a voter on the subject of marking his or her ballot.

(2) Place a sign relating to voters' qualifications or speak to a voter on the subject of his or her qualifications except as provided in Section 14240.

(3) Photograph, video record, or otherwise record a voter entering or exiting a polling place.

(b) Any violation of this section is punishable by imprisonment in a county jail for not more than 12 months, or in the state prison. Any person who conspires to violate this section is guilty of a felony.

(c) For purposes of this section, 100 feet means a distance of 100 feet from the room or rooms in which voters are signing the roster and casting ballots.

**Section 18542.** Every employer, whether a corporation or natural person, or any other person who employs, is guilty of a misdemeanor if, in paying his or her employees the salary or wages due them, encloses their pay in pay envelopes upon which or in which there is written or printed the name of any candidate or any political mottoes, devices, or arguments containing threats,

express or implied, intended or calculated to influence the political opinions or actions of the
employees.

**Section 18543.**  (a) Every person who knowingly challenges a person's right to vote without
probable cause or on fraudulent or spurious grounds, or who engages in mass, indiscriminate,
and groundless challenging of voters solely for the purpose of preventing voters from voting or
to delay the process of voting, or who fraudulently advises any person that he or she is not
eligible to vote or is not registered to vote when in fact that person is eligible or is registered, or
who violates Section 14240, is punishable by imprisonment in the county jail for not more than
12 months or in the state prison.

(b) Every person who conspires to violate subdivision (a) is guilty of a felony.

**Section 18544.**  (a) Any person in possession of a firearm or any uniformed peace officer,
private guard, or security personnel or any person who is wearing a uniform of a peace officer,
guard, or security personnel, who is stationed in the immediate vicinity of, or posted at, a polling
place without written authorization of the appropriate city or county elections official is
punishable by a fine not exceeding ten thousand dollars ($10,000), by imprisonment pursuant to
subdivision (h) of Section 1170 of the Penal Code for 16 months or two or three years, or in a
county jail not exceeding one year, or by both that fine and imprisonment.

(b) This section shall not apply to any of the following:

(1) An unarmed uniformed guard or security personnel who is at the polling place to cast his or
her vote.

(2) A peace officer who is conducting official business in the course of his or her public
employment or who is at the polling place to cast his or her vote.

(3) A private guard or security personnel hired or arranged for by a city or county elections
official.

(4) A private guard or security personnel hired or arranged for by the owner or manager of the
facility or property in which the polling place is located if the guard or security personnel is not
hired or arranged solely for the day on which an election is held.

**Section 18545.**  Any person who hires or arranges for any other person in possession of a firearm
or any uniformed peace officer, private guard, or security personnel or any person who is
wearing a uniform of a peace officer, guard, or security personnel, to be stationed in the
immediate vicinity of, or posted at, a polling place without written authorization of the
appropriate elections official is punishable by a fine not exceeding ten thousand dollars
($10,000), by imprisonment pursuant to subdivision (h) of Section 1170 of the Penal Code for 16
months or two or three years, or in a county jail not exceeding one year, or by both that fine and
imprisonment. This section shall not apply to the owner or manager of the facility or property in
which the polling place is located if the private guard or security personnel is not hired or
arranged solely for the day on which the election is held.

**Section 18546.**  As used in this article:

(a) "Elections official" means the county elections official, registrar of voters, or city clerk.

(b) "Immediate vicinity" means the area within a distance of 100 feet from the room or rooms in which the voters are signing the roster and casting ballots.

**Section 18547.**  (a) In addition to any other fine or penalty imposed by this article, the court may order any person convicted of violating this article to pay a restitution fine, the amount of which shall be determined by the court and be commensurate with the seriousness of the offense.

(b) The moneys derived from the fine assessed pursuant to subdivision (a) shall be deposited in the Voter Intimidation Restitution Fund, created in Section 18548.

**Section 18548.**  The Voter Intimidation Restitution Fund is hereby established in the State Treasury. Upon appropriation by the Legislature, moneys in the fund shall be allocated to the Secretary of State to be used in voter education campaigns addressing the specific crime committed by anyone convicted of violating this article. The funds shall also be used for the administrative costs associated with distribution of the fund.