UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MINDS, INC., et al.**,<br><br>        Plaintiffs,<br><br>v.<br><br>**ROBERT BONTA, Attorney General of California**,<br><br>        Defendant. | Case No. 2:23-cv-02705 HDV MAA<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND** |

1

## I. INTRODUCTION

Before the Court is defendant Robert Bonta, Attorney General of California's, ("Defendant") Motion to Dismiss Amended Complaint ("Motion"). [Dkt. No. 23-1]. Defendant moves to dismiss on the grounds that plaintiffs Minds, Inc., Tim Pool, the Babylon Bee LLC, and National Religious Broadcasters (collectively, "Plaintiffs") lack standing to challenge California Assembly Bill 587, and that their claims fail as a matter of law.

For the reasons discussed below, the Court finds that Plaintiffs fail to allege either an actual injury or a realistic danger of a future injury as required for judicial review. "Conjectural or hypothetical" injuries are simply not enough to create a case or controversy under Article III. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The Motion is granted under Fed. R. Civ. P. 12(b)(1), and the First Amended Complaint ("FAC") is dismissed with leave to amend.[1]

## II. BACKGROUND

### A. California Assembly Bill 587

AB 587 (2022) requires social media companies[2] to post their terms of service[3] that specify what user behavior and activities are permitted on the social media platform[4] or which may be

---

[1] Because the Court dismisses all claims on standing grounds, the Court does not reach the broader constitutional questions raised in Defendant's Fed. R. Civ. P. 12(b)(6) arguments.

[2] AB 587 defines "social media company" as "a person or entity that owns or operates one or more social media platforms". Cal. Bus. & Prof. Code § 22675(d). The statute "shall not apply to a social media company that generated less than one hundred million dollars ($100,000,000) in gross revenue during the preceding calendar year." *Id.* § 22680.

[3] "Terms of service" are defined as "a policy or set of policies adopted by a social media company that specifies, at least, the user behavior and activities that are permitted on the internet-based service owned or operated by the social media company, and the user behavior and activities that may subject the user or an item of content to being actioned." *Id.* § 22675(f).

[4] The statute defines "social media platform" as "a public or semipublic internet-based service or application that has users in California and that meets both of the following criteria:
(1) (A) A substantial function of the service or application is to connect users in order to allow users to interact socially with each other within the service or application.
(B) A service or application that provides email or direct messaging services shall not be considered to meet this criteria on the basis of that function alone.

subject to action. Cal. Bus. & Prof. Code § 22676. The statute also requires social media companies to submit semiannual reports that include a description of any changes to their terms of service as well as "[a] statement of whether the current version of the terms of service defines each of the following categories of content, and, if so, the definitions of those categories, including any subcategories: (A) Hate speech or racism; (B) Extremism or radicalization; (C) Disinformation or misinformation; (D) Harassment; and (E) foreign political interference." *Id.* § 22677(a)(2)–(3). The semiannual reports must also include "[i]nformation on content that was flagged by the social media company as content belonging to any of the categories described in paragraph (3)," including the total numbers of flagged and actioned items of content, among other figures. *Id.* § 22677(a)(5). Companies that violate these provisions are subject to civil penalties. *Id.* § 22678(a)(1).

**B. The First Amended Complaint**

Plaintiffs Minds, Inc., Tim Pool, the Babylon Bee LLC, and National Religious Broadcasters are: a social networking app, an active social media content creator, a satirical news website, and a nonpartisan association of Christian communicators. FAC ¶¶ 10–13. On May 15, 2023, they filed the FAC, alleging that AB 587 will cause social media companies to censor them and will cause them to self-censor their own speech for fear that their speech will be actioned. FAC ¶¶ 103, 105, 118, 119. In the FAC, Plaintiffs claim that AB 587 (1) violates the First Amendment, facially and as-applied; (2) is overbroad, in violation of the First Amendment; and (3) is vague, in violation of the Fourteenth Amendment. FAC ¶¶ 110–133.

---

(2) The service or application allows users to do all of the following:
(A) Construct a public or semipublic profile for purposes of signing into and using the service or application.
(B) Populate a list of other users with whom an individual shares a social connection within the system.
(C) Create or post content viewable by other users, including, but not limited to, on message boards, in chat rooms, or through a landing page or main feed that presents the user with content generated by other users." *Id.* § 22675(e).

### C. Procedural History

Plaintiffs Minds, Inc., Tim Pool, and the Babylon Bee LLC, (collectively, the "Initial Plaintiffs") initiated this action on April 11, 2023. Complaint [Dkt. No. 1]. On May 3, 2023, Defendant filed a motion to dismiss, arguing that the Initial Plaintiffs lacked standing and that the Complaint failed to state a claim as a matter of law. [Dkt. No. 16]. Instead of filing an opposition to that motion, the Initial Plaintiffs filed the FAC on May 15, 2023, adding the National Religious Broadcasters ("NRB") as a named plaintiff. Plaintiffs alleged that NRB includes member groups, such as Salem Media Group, Inc. ("Salem Media"), that operate social media platforms that are in fact subject to AB 587. FAC ¶¶ 16, 107, 121.

Defendant filed the instant Motion on May 25, 2023. Plaintiffs filed their Opposition and Defendant filed his Reply. [Dkt. Nos. 26, 28]. On June 16, 2023, Plaintiffs filed a Supplemental Statement Re Motion to Dismiss and Particular Complaint Allegations ("Plaintiffs' Supplemental Statement"), notifying the Court that Salem Media had disabled its functions that allow users to create profiles, subscribe to other user's channels, and post video content, and that it "does not intend to reenable them, for reasons other than the challenged statute." [Dkt. No. 30]. Accordingly, Plaintiffs withdrew any allegations that Salem Media is subject to the requirements of AB 587. *Id.*

### III. LEGAL STANDARD

A motion to dismiss an action pursuant to Fed. R. Civ. P. 12(b)(1) challenges the Court's subject matter jurisdiction over the claims presented. Under Rule 12(b)(1), a party may seek dismissal "either on the face of the pleadings or by presenting evidence." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (citation omitted). In resolving a facial attack on jurisdiction, the Court only considers the allegations set forth in the complaint. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In contrast, when a party asserts a factual challenge, "the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.*

### IV. DISCUSSION

Defendant's threshold argument is that Plaintiffs' FAC fails to allege a justiciable controversy under Article III of the Constitution because it does not plausibly allege any

injury-in-fact caused by AB 587's requirements. Motion at 8–11. Plaintiffs concede that they are not subject to the reporting requirements of AB 587 because they do not meet the substantive and financial definitions of a social media company under Cal. Bus. & Prof. Code §§ 22675 and 22680.[5] Instead, Plaintiffs argue they have standing based on the following two theories of putative injury: (1) that AB 587 will make it more likely that social media platforms will moderate or censor their content, and (2) that AB 587 will force Plaintiffs to self-censor to avoid having their content actioned. FAC ¶¶ 118, 119.[6]

Under Article III of the Constitution, federal courts' review is limited to "cases" and "controversies". *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540 (2016). To establish a case or controversy, plaintiffs must "present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged behavior; and likely to be redressed by a favorable ruling." *Davis v. Federal Election Comm'n*, 554 U.S. 724, 733 (2008); *Lujan*, 504 U.S. at 560–61. Moreover, the alleged injury must not be "conjectural or hypothetical". *Lujan*, 504 U.S. at 560 (internal citation and quotation marks omitted); *see also Davis*, 504 U.S. at 734 ("[T]he injury required for standing need not be actualized. A party facing prospective injury has standing to sue where the threatened injury is real, immediate, and direct.").

In a pre-enforcement action, which this case undoubtedly is, "Plaintiffs must demonstrate a ***realistic danger*** of sustaining a direct injury as a result of the statute's operation or enforcement." *Libertarian Party of Los Angeles Cnty. v. Bowen*, 709 F.3d 867, 870 (9th Cir. 2013) (quoting *Babbitt*

---

[5] In their Opposition, Plaintiffs initially argued that Plaintiff National Religious Broadcasters had associational standing because, as of the date of filing, its member Salem Media Group was subject to AB 587. They also argued that under the "one-plaintiff rule" the Court need not decide the standing of the other named Plaintiffs. Opp. at 9. However, since then Plaintiffs have withdrawn that factual allegation concerning Salem Media (thereby conceding that Salem Media is not subject to the requirements of AB 587). *See* Plaintiffs' Supplemental Statement at 2. Those arguments are therefore moot and not considered here.

[6] Defendant asks the Court to take judicial notice of the existence and terms of certain documents that form parts of AB 587's legislative history, as well as other related official government records. Request for Judicial Notice [Dkt. No. 23-2]. Because the public sources of these documents can be readily determined, Defendant's unopposed request is granted. *See* Fed. R. Evid. 201(b).

*v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)) (internal quotation marks omitted) (emphasis added). A plaintiff may satisfy the "concreteness" requirement by alleging an injury that actually exists or by alleging a risk of real harm. *Spokeo, Inc.*, 578 U.S. at 340. In First Amendment cases, the Supreme Court has required plaintiffs to demonstrate "a claim of specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 14 (1972).

Plaintiffs' allegations do not satisfy these important foundational requirements for justiciability. Plaintiffs' first theory of standing—that AB 587 will make it "more likely" Plaintiffs' content will be moderated or censored—is simply conjecture and is unsupported by any allegations in the FAC that Plaintiffs have suffered direct injuries in the present or that they face a "realistic danger" of specific harm in the future. *See Libertarian Party of Los Angeles Cnty,* 709 F.3d at 870. Nor do they posit any coherent theory of how any censorship or harm they may suffer could be "fairly traceable" to AB 587, or how it is "real, immediate, and direct." *See Davis*, 504 U.S. at 733, 734. In lieu of specific allegations, Plaintiffs in essence ask the Court to accept by fiat a four-step causal chain as follows:

(i) AB 587 creates reporting requirements for large media platforms to identify their content moderation policies as they relate to the categories of speech and conduct identified in Cal. Bus. & Prof. Code § 22677(a)(2)–(3).

(ii) Large social media companies with revenues exceeding $100M will feel threatened that these reporting requirements will subject them to fines, regulatory action, and/or public shaming.

(iii) As a result of this alleged fear, social media companies will expand their content moderation policies and be "force[d] . . . to err on the side of flagging and actioning any speech that arguably falls into any of the specified categories." FAC ¶ 32.

(iv) Plaintiffs' speech will be flagged and limited by these enhanced content moderation policies.

*See also* Opp. at 5, 12 (arguing that social media companies will be "encouraged" or "incentivized" to more robustly action Plaintiffs' content). But there is nothing in the FAC to justify the logical leaps required in steps (ii), (iii), and (iv) above, and the bare allegation that there is a chance of this

hypothetical harm fails to rise to the level of an injury in fact. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 495 (2009) (denying standing where "[t]here may be a chance, but it is hardly a likelihood"); *see also Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." (internal quotation omitted)).

Similarly, Plaintiffs' allegation that they "will be forced to self-censor" is insufficient to allege a threat of specific future harm. *See Lujan*, 504 U.S. at 564 ("'[S]ome day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require." (internal citation omitted)). Plaintiffs' heavy reliance on *Libertarian Party of Los Angeles County*, *supra*, is misplaced. There, the plaintiffs challenged an election law that mandated that persons circulating nomination papers could only do so in their own district or political subdivision. 709 F.3d at 869. The plaintiffs sought to serve in political subdivisions other than their own and "refrained from doing so because they fear[ed] enforcement, including criminal penalties, of the California Elections Code." *Id.* The Ninth Circuit stated, "[W]here a plaintiff has refrained from engaging in expressive activity ***for fear of prosecution under the challenged statute***, such self-censorship is a constitutionally sufficient injury as long as it is based on an actual and well-founded fear that the challenged statute will be enforced." *Id.* at 870 (internal citation and quotation marks omitted) (emphasis added). The Court went on to find that the plaintiffs had standing because they adequately alleged a "threat of prosecution", utilizing the *McCormack v. Hiedeman* factors[7] for that kind of claim. *Id.*; *see also California Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1095 (9th Cir. 2003) ("The self-censorship door to standing does not open for every plaintiff. . . . In the free speech context, such a fear of prosecution will only inure if the plaintiff's intended speech arguably falls within the statute's reach.").

---

[7] "(1) [W]hether the plaintiffs have articulated a concrete plan to violate the law in question, (2) whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and (3) the history of past prosecution or enforcement under the challenged statute." 694 F.3d 1004, 1021 (9th Cir. 2012).

7

Plaintiffs, however, concede they are not subject to AB 587. Consequently, they cannot allege any fear of prosecution under AB 587 and cases considering such allegations do not apply. *See also Younger v. Harris*, 401 U.S. 37, 42 (1971) ("[P]ersons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs . . . .").

Plaintiffs' other proffered authority is equally distinguishable. In *Lamont v. Postmaster General*, 381 U.S. 301 (1965), the appellant established standing only because he was required to take "affirmative steps" based on the law at issue, even though the law was directed at the Postmaster General. *See Meese v. Keene*, 481 U.S. 465, 476 (1987) ("The necessity of going on record as requesting this political injury constituted an injury . . . ."). In *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1983), appellants established injury because two of their books were among those whose sales were impaired as a result of the state commission's actions. 372 U.S. at 64 n.6. And in *Department of Commerce v. New York*, 139 S. Ct. 2551 (2019), the Supreme Court held that respondent states had standing to challenge the Secretary of Commerce's census questionnaire because there was concrete evidence at trial about the direct and measurable effects on states' federal funding streams if a census undercount was tacitly permitted. *Id.* at 2566. In contrast, Plaintiffs do not allege any "affirmative steps" that they must take, do not identify any products whose sales have been impaired as a result of the legislation, and do not allege with any particularity any imminent harms that would be traceable to AB 587.[8]

Plaintiffs' allegations are more analogous to those raised in *Laird*, in which the respondents alleged that the U.S. Army's intelligence-gathering operations "chilled" their First Amendment

---

[8] Plaintiffs also analogize to the "pragmatic considerations" mentioned in *Bantam Books*, to argue that "dominant tech firms such as Google or Facebook are less likely to challenge AB 587 due to fears that it could affect [] more financially important regulatory and legal priorities." Opp. at 11–12. But this argument is unpersuasive given that trade associations who represent social media companies such as Facebook, Twitter, Google, and Tiktok—who are all subject to AB 587—**have** already challenged laws in other states that likewise require them to publish their content moderation policies. *See NetChoice, LLC v. Att'y Gen.*, 34 F.4th 1196 (11th Cir. 2022); *NetChoice, LLC v. Paxton*, 49 F.4th 439 (5th Cir. 2022); *see also LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1154 (9th Cir. 2000) (analogizing to the pragmatic considerations in *Bantam Books* when finding that "none of the licensees involved in this case would be likely to litigate this issue simply because it is prevented from hosting a convention event or two").

rights for fear of how that data might be used in the future.  408 U.S. at 13–14.  The Supreme Court found that their alleged injury amounted to a disagreement with the Executive Branch about the operation, which ultimately did not meet the test for a direct injury.  *Id.*  In concluding that the respondents lacked standing, the Supreme Court explained, "Allegations of a subjective chill are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm."  *Id.*  Here, too, Plaintiffs' allegations fail to allege any plausible injury beyond speculation.  *See also Meese*, 481 U.S. at 473 ("If Keene had merely alleged that the appellation deterred him by exercising a chilling effect on the exercise of his First Amendment rights, he would not have standing to seek its invalidation.").

In summary, the FAC fails to allege that AB 587 has caused Plaintiffs to suffer a specific present objective harm or a threat of specific future harm.  *See Laird*, 408 U.S. at 14.  Without this required showing, the FAC does not establish a case or controversy before this Court.

## V. CONCLUSION

In light of the foregoing, Defendant's Motion to Dismiss is **granted**.  Because the Court cannot find that any amendment would be futile, the FAC is dismissed with leave to amend.  *See Eminence Capital, L.L.C. v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (dismissal without leave is improper unless it is clear that the complaint could not be saved by any amendment).

If Plaintiffs choose to amend the First Amended Complaint, they must do so no later than **September 18, 2023.**

Dated:  August 18, 2023

                                    Hernán D. Vera
                                    United States District Judge

9